IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

ASHETRA PRENTICE,

                  Plaintiff,                         No. 03:13-cv-01680-HZ

        v.

CAROLYN W. COLVIN, Acting                OPINION & ORDER
Commissioner of Social Security,

                  Defendant.


Merrill Schneider
SCHNEIDER, KERR & GIBNEY LAW OFFICES
P.O. Box 14490
Portland, Oregon 97293

        Attorney for Plaintiff

S. Amanda Marshall
UNITED STATES ATTORNEY
District of Oregon
Ronald K. Silver
ASSISTANT UNITED STATES ATTORNEY
1000 S.W. Third Avenue, Suite 600
Portland, Oregon 97201-2902


1 - OPINION & ORDER

Jordan D. Goddard
SPECIAL ASSISTANT UNITED STATES ATTORNEY
Office of the General Counsel
Social Security Administration
701 Fifth Avenue, Suite 2900 M/S 221A
Seattle, Washington 98104-7075

     Attorneys for Defendant

HERNANDEZ, District Judge:

     Plaintiff Ashetra Prentice brings this action seeking judicial review of the Commissioner's

final decision to deny disability insurance benefits (DIB).  This Court has jurisdiction pursuant to

42 U.S.C. § 405(g).  I affirm the Commissioner's decision.

PROCEDURAL BACKGROUND

     Plaintiff applied for DIB on June 10, 2010, alleging an onset date of December 31, 2001.

Tr. 157-58.  Her application was denied initially and on reconsideration.  Tr. 82-90, 106-10, 91-

99, 115-19.

     On January 31, 2012, Plaintiff appeared, with counsel, for a hearing before an

Administrative Law Judge (ALJ).  Tr. 28-81.  During the hearing, she amended her alleged onset

date to July 10, 1997.  Tr. 53.  On February 7, 2012, the ALJ found Plaintiff not disabled.  Tr. 9-

27.  The Appeals Council denied review.  Tr. 1-5.

FACTUAL BACKGROUND

     Plaintiff alleges disability based on having chronic ulcerative colitis, anxiety attacks,

migraines, "ileost," hives, high blood pressure, fatigue, and back and neck pain.  Tr. 173.  At the

time of the hearing, she was forty-eight years old.  Tr. 34.  She has a bachelor's degree in

mechanical engineering and past relevant work experience as a mechanical engineer.  Tr. 20, 34-

2 - OPINION & ORDER

35.  Because the parties are familiar with the medical and other evidence of record, I refer to any

additional relevant facts necessary to my decision in the discussion section below.

SEQUENTIAL DISABILITY EVALUATION

A claimant is disabled if unable to "engage in any substantial gainful activity by reason of

any medically determinable physical or mental impairment which . . . has lasted or can be

expected to last for a continuous period of not less than 12 months[.]"  42 U.S.C. §§

423(d)(1)(A), 1382c(3)(a).

Disability claims are evaluated according to a five-step procedure.  See Valentine v.

Comm'r, 574 F.3d 685, 689 (9th Cir. 2009) (in social security cases, agency uses five-step

procedure to determine disability).   The claimant bears the ultimate burden of proving disability.

Id.

In the first step, the Commissioner determines whether a claimant is engaged in

"substantial gainful activity."  If so, the claimant is not disabled.  Bowen v. Yuckert, 482 U.S.

137, 140 (1987); 20 C.F.R. §§ 404.1520(b), 416.920(b).  In step two, the Commissioner

determines whether the claimant has a "medically severe impairment or combination of

impairments."  Yuckert, 482 U.S. at 140-41; 20 C.F.R. §§ 404.1520(c), 416.920(c).  If not, the

claimant is not disabled.

In step three, the Commissioner determines whether plaintiff's impairments, singly or in

combination, meet or equal "one of a number of listed impairments that the [Commissioner]

acknowledges are so severe as to preclude substantial gainful activity."  Yuckert, 482 U.S. at

141; 20 C.F.R. §§ 404.1520(d), 416.920(d).  If so, the claimant is conclusively presumed

disabled; if not, the Commissioner proceeds to step four.  Yuckert, 482 U.S. at 141.

In step four, the Commissioner determines whether the claimant, despite any impairment(s), has the residual functional capacity (RFC) to perform "past relevant work." 20 C.F.R. §§ 404.1520(e), 416.920(e). If the claimant can, the claimant is not disabled. If the claimant cannot perform past relevant work, the burden shifts to the Commissioner. In step five, the Commissioner must establish that the claimant can perform other work. Yuckert, 482 U.S. at 141-42; 20 C.F.R. §§ 404.1520(e) & (f), 416.920(e) & (f). If the Commissioner meets his burden and proves that the claimant is able to perform other work which exists in the national economy, the claimant is not disabled. 20 C.F.R. §§ 404.1566, 416.966.

## THE ALJ'S DECISION

At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since her alleged onset date through December 31, 2001, her date of last insured. Tr. 14. Next, at steps two and three, the ALJ determined that Plaintiff has severe impairments of Crohn's disease (which the ALJ noted was later diagnosed as ulcerative colitis), obesity, and an anxiety-panic disorder, but that the impairments did not meet or equal, either singly or in combination, a listed impairment. Tr. 14-16.

At step four, the ALJ concluded that Plaintiff has the residual functional capacity (RFC) to perform a full range of work at all exertional levels but with the following non-exertional limitations: (1) easy access to a restroom; (2) the ability to remember, understand, and carry out simple and detailed, but not complex, tasks or instructions, typical of occupations with a specific vocational preparation (SVP) of 1 or 2; (3) no public contact; and (4) the ability to work in proximity to co-workers but not involving work that requires teamwork. Tr. 16. With this RFC, the ALJ determined that Plaintiff is unable to perform any of her past relevant work. Tr. 20.

4 - OPINION & ORDER

However, at step five, the ALJ determined that Plaintiff is able to perform jobs that exist in

significant numbers in the economy such as kitchen helper, recycler/reclaimer, and hand

packager. Tr. 21. Thus, the ALJ determined that plaintiff is not disabled. Tr. 22.

## STANDARD OF REVIEW

A court may set aside the Commissioner's denial of benefits only when the

Commissioner's findings are based on legal error or are not supported by substantial evidence in

the record as a whole. Vasquez v. Astrue, 572 F.3d 586, 591 (9th Cir. 2009). "Substantial

evidence means more than a mere scintilla but less than a preponderance; it is such relevant

evidence as a reasonable mind might accept as adequate to support a conclusion." Id. (internal

quotation marks omitted). The court considers the record as a whole, including both the

evidence that supports and detracts from the Commissioner's decision. Id.; Lingenfelter v.

Astrue, 504 F.3d 1028, 1035 (9th Cir. 2007). "Where the evidence is susceptible to more than

one rational interpretation, the ALJ's decision must be affirmed." Vasquez, 572 F.3d at 591

(internal quotation marks and brackets omitted); see also Massachi v. Astrue, 486 F.3d 1149,

1152 (9th Cir. 2007) ("Where the evidence as a whole can support either a grant or a denial, [the

court] may not substitute [its] judgment for the ALJ's") (internal quotation marks omitted).

## DISCUSSION

Plaintiff argues that the ALJ erred by failing to treat the testimony and statements of

Plaintiff's mother, who is a psychiatrist, as medical opinion evidence instead of third-party

witness evidence. Defendant contends the ALJ did not err, but even she did, it was harmless.

Shortly before the January 31, 2012 hearing, Plaintiff's mother Agatha Breckenridge,

M.D., submitted a three-page single-spaced typed "To Whom it May Concern" statement. Tr.

5 - OPINION & ORDER

224-26.  There, Dr. Breckenridge stated that the "[c]hronological information is observational and factual, from parents, both psychiatrists, with minimal information from Ashetra herself except for documentation in the Disability forms." Tr. 224.

Dr. Breckenridge noted that during Plaintiff's first pregnancy, Plaintiff experienced claustrophobia in elevators and experienced her first panic attack.  Tr. 225.  She returned to work after the delivery, but "found it difficult to juggle being a mother, a career woman, [and] homemaker." Id.  Plaintiff began having severe panic attacks during her second pregnancy in 1997. Id.  According to Dr. Breckenridge, Plaintiff was "agitated and hardly functional." Id.  Yet she refused hospitalization and formal psychiatric treatment.  Id.  Dr. Breckenridge took family leave to be with Plaintiff, providing her with "constant supervision and psychological support." Id.  Plaintiff was treated with minor tranquilizers.  Id.  After the delivery, Plaintiff had "[s]ome postpartum depression with a slow decline in functioning[.]" Id.

Two years later, in 1999, Plaintiff had her third child.  Id.  According to her mother, Plaintiff "found it very stressful to care for the two little ones[.]" Id.  Her overall functioning deteriorated and she started to isolate herself.  Id.  She became "progressively agoraphobic, . . . only attending to essentials like groceries, or drop the children at bus stop and shop at nurseries for plants." Id.  Dr. Breckenridge stated that she had "not been privy to [Plaintiff's] medical problems." Tr. 226.  But, she listed a number of gastrointestinal problems, obesity, and migraines, as well as the 2008 removal of an ovarian tumor and hormonal problems, as medical issues Plaintiff had faced since her thirties.  Id.

In a summary section, Dr. Breckenridge noted that despite having a stressful childhood, Plaintiff had graduated from college and worked successfully for ten years.  Id.  She quit work

because the stress of being a mother, homemaker, and career woman was overwhelming.  Id.

She has a positive family history for anxiety disorders, and Plaintiff's anxiety and panic

symptoms worsened as her stress tolerance declined.  Id.  The anxiety has negatively affected

various systems, including gastrointestinal, hormonal, metabolic, cardiovascular, and respiratory.

Id.  Dr. Breckenridge also noted that Plaintiff's activities of daily living are "severely curtailed,"

but include "cooking, cleaning, laundry, etc."  Id.  Her social functioning is minimal.  Id.  In the

end, Dr. Breckenridge opined that with the "severe and significant physical and mental

problems," Plaintiff could not "be gainfully employed in the competitive job market[.]"  Id.

     During the hearing, Plaintiff's mother testified that before 2001, she saw Plaintiff two to

three times per week.  Tr. 55.  Dr. Breckenridge stated that she was "mainly [an] observer," when

Plaintiff has been decompensating, but in 1997, when Plaintiff began to have severe panic attacks

during her second pregnancy, Dr. Breckenridge stayed with Plaintiff for a couple of months until

Plaintiff started taking some medications and her symptoms started declining.  Tr. 58-60.  After

the delivery of her second child, Plaintiff did not need her parents or the medications.  Tr. 60.

Then, however, she started becoming more anxious and isolating herself.  Tr. 61.

     When she became pregnant again, she did not have any major panic episodes, although

she stayed in her home.  Tr. 62.  Dr. Breckenridge opined that after the third child was born,

Plaintiff could not have returned to work because "she took over caring for two toddlers by

herself."  Id.  She wanted to take care of her children "by herself."  Id.

     Plaintiff had increased anxiety symptoms, Tr. 62-63, which, in Dr. Breckenridge's

opinion, caused her gastrointestinal problems which made her run to the bathroom, have

diarrhea, and feel uncomfortable.  Id.  Dr. Breckenridge opined that Plaintiff was moderately

7 - OPINION & ORDER

severely impaired in her activities of daily living because "she put all her energies into the kids, and then two little fellows not sleeping." Tr. 64. She also said that the moderate impairment in these activities was due to the combination of Plaintiff's anxiety and taking care of her two young children. Tr. 68. Her social functioning was poor, as demonstrated by the fact that she used to have friends, go out for lunch, and host parties, but she no longer hosted parties. Tr. 64, 69. And, in the "category of concentration, persistence [or] pace," Dr. Breckenridge opined that Plaintiff was "[f]air enough for the daily activities" but she did not do anything "major." Tr. 64-65. When asked about the "C" criteria," Dr. Breckenridge stated that "with the two little ones, Plaintiff had an awfully hard time," and suggested that anything more would lead to decompensation. Tr. 66.

After the hearing, Dr. Breckenridge wrote another letter, dated February 7, 2012, further explaining her opinion on Plaintiff's mental condition. Tr. 230. She opined that Plaintiff suffered from Listed Impairment 12.06 for anxiety due to marked difficulties in her social functioning, and moderate to marked difficulties in her concentration, persistence and pace, as well as meeting the "C" criteria. Id. She believed that Plaintiff has met the listing since 1997 when Plaintiff broke down during her second pregnancy, causing Dr. Breckenridge to take a leave of absence from her own job to attend to Plaintiff. Id. At that time, Plaintiff was unable to manage her home or attend to her own basic needs. Id. She also suffered from extreme agoraphobia. Id. Since that time, in Dr. Breckenridge's opinion, Plaintiff's functioning has deteriorated to the point where she isolates herself in her home. Id.

The ALJ discussed Dr. Breckenridge's testimony in some detail. Tr. 17. The ALJ also discussed Plaintiff's testimony and her husband's testimony. Tr. 16-18. However, she rejected

much of Plaintiff's testimony as not fully credible.  Tr. 17-18.  In discussing this finding, the ALJ noted that the record contained "little objective evidence documenting disabling impairment during the period at issue from July 10, 1997, through December 31, 2001, her date last insured." Tr. 18.  The ALJ found that the record supported a finding that Plaintiff had a history of anxiety and panic attacks.  Id.  The ALJ remarked on the fact that Plaintiff's mother stayed with her during her second pregnancy in 1997 to provide constant supervision.  Id.  Additionally, the ALJ noted that the record showed that during her third pregnancy, Plaintiff reported panic attacks for which she was treated with Klonopin.  Id.  The record, however, showed no other psychiatric problems other than some degree of claustrophobia when she was having panic attacks.  Id.

The ALJ expressly acknowledged that Plaintiff's "problems have escalated over time." Tr. 19.  The ALJ also acknowledged that while the testimony of Plaintiff and her witnesses was severe, "Social Security Regulations require objective evidence showing a disability condition during the period at issue."  Id.  Here, the ALJ continued, the record failed to reveal objective evidence of a disabling condition during the period at issue which was between the alleged onset date of July 1997 until December 31, 2001.  Id.; see also Tr. 12 (noting the relevant period was from the alleged onset date of July 10, 1997, until December 31, 2001, her date of last insured).

In particular, the ALJ noted that Plaintiff stopped working in 1996 for reasons not related to her disability.  Tr. 19.  Although she experienced an extended period of decompensation during her second pregnancy in 1997, she experienced significant improvement in her anxiety symptoms after the birth of her second child.  Id.  Although the record showed an isolated report of anxiety in September 2001, related to the fear that her husband might lose his job, and then more difficulty with anxiety and panic attacks in December 2002, for which she restarted Paxil,

the record did not support a finding that the attacks were so severe that she could not function. Id. Additionally, there was no indication that she participated in any mental health counseling during the period at issue. Id.

As to Plaintiff's mother's testimony in particular, the ALJ remarked that she could not give full weight to Dr. Breckenridge's opinion because in responding to questioning, Dr. Breckenridge acknowledged that part of what she observed was related to Plaintiff being a mother of two young children and not just because of her anxiety. Tr. 20.

In assessing disability, the ALJ "will always consider the medical opinions in [the claimant's] case record together with the rest of the relevant evidence [] receive[d]." 20 C.F.R. § 404.1527(b). "Medical opinions are statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of [the claimant's] impairments[.]" 20 C.F.R. § 404.1527(a)(2). "Regardless of its source," the agency "will evaluate every medical opinion" it receives. 20 C.F.R. § 404.1527(c).

Several factors are considered in the weight to be given medical opinions, including the examining relationship, treatment relationship, length of treatment relationship and frequency of examination, the nature and extent of the treatment relationship, the supportability of the opinion, consistency, specialization, and certain other factors such as how familiar the medical source is with the disability program, evidentiary requirements, and other evidence in the record. 20 C.F.R. § 1527(c)(1)-(6). Certain issues are reserved to the Commissioner, however, including whether an impairment or impairments meet or equal a listed impairment, the determination of the claimant's residual functional capacity, and the ultimate determination of disability. 20 C.F.R. § 1527(d).

10 - OPINION & ORDER

"Acceptable medical sources" are defined in 20 C.F.R. § 404.1513(a). Licensed physicians are included there. Id. Medical sources not listed in section 1513(a), such as nurse-practitioners, physicians' assistants, etc., are considered "other sources." 20 C.F.R. § 404.1513(d)(1). "Other sources" also include non-medical sources such as spouses and parents. 20 C.F.R. § 1513(d)(4).

The ALJ did not expressly state whether she treated Plaintiff's mother as a medical source or as a third-party non-medical "other source." I agree with Defendant that Dr. Breckenridge was not a treating, examining, or non-examining physician as those terms are understood.

Social Security Regulations "distinguish among the opinions of three types of physicians: (1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant but who review the claimant's file (nonexamining or reviewing physicians)." Holohan v. Massanari, 246 F.3d 1195, 1201-02 (9th Cir. 2001) (internal quotation marks and brackets omitted).

Dr. Breckenridge is not Plaintiff's treating physician. There are no treatment notes from her in the record, she did prescribe medication, and there is no indication Plaintiff consented to a treatment relationship with her mother. Dr. Breckenridge also testified at the hearing that she was not Plaintiff's treating practitioner. Tr. 59.

She was not an examining physician. Her letters and testimony contain no clinical findings such as mental status examination results and no evidence that Dr. Breckenridge ever conducted an examination of Plaintiff. In her January 2012 letter, Dr. Breckenridge states that her opinions are based on observation and "minimal information from [Plaintiff] herself except for documentation in the Disability forms[,]" thus confirming she did not have an examining

11 - OPINION & ORDER

relationship with her daughter.  Tr. 224.

And, Dr. Breckenridge is not a non-examining, reviewing physician.  The only evidence that Dr. Breckenridge reviewed any of Plaintiff's medical files is her reference to having reviewed "documentation in the Disability forms."  Tr. 224.  But, this vague reference to "documentation" in "disability forms" does not establish that Dr. Breckenridge reviewed Plaintiff's medical history from the relevant time period.  She was not a non-examining physician.

Given that Dr. Breckenridge was not any of the three recognized types of physicians, Defendant argues that Dr. Breckenridge's testimony is best categorized as lay witness or "other source" testimony.  As Defendant notes, like other lay witnesses, Dr. Breckenridge has "not seen [Plaintiff] in a professional capacity in connection with [her] impairments[.]"  Soc. Sec. Ruling (SSR) 06-03p, available at 2006 WL 2329939, at *6.  Defendant acknowledges Dr. Breckenridge's medical background and concedes she has the qualifications to provide medical evidence in other cases, assuming she demonstrates her position in any given case as a treating, examining, or non-examining medical source.  But, Defendant argues, in this case, Dr. Breckenridge's relationship with Plaintiff is personal, not professional.  Given that lay witnesses provide competent testimony about a claimant's functioning based on their ability to regularly observe the claimant, Defendant contends that Dr. Breckenridge's opinion, which she herself acknowledged was based primarily on observation of Plaintiff, is consistent with the opinions offered by lay witnesses.  Finally, Defendant notes that Plaintiff previously acknowledged that her mother's testimony is lay testimony.  Tr. 234 (stating in August 21, 2012 Memorandum to Appeals Council that "Ms. Prentice's mother is a licensed psychiatrist.  However, she did not

12 - OPINION & ORDER

testify as a medical expert but as a lay witness").

Plaintiff argues that simply because Dr. Breckenridge was Plaintiff's mother does not mean that her testimony is viewed exclusively as "other source" lay witness testimony. She acknowledges that third-party statements from "other sources" such as parents are entitled to less deference than medical opinions. But, she argues, nothing in the Commissioner's regulations or rulings indicate that an acceptable medical source is mutually exclusive of also constituting an "other source." Because the ALJ failed to treat Dr. Breckenridge's evidence as medical evidence, Plaintiff argues that ALJ erred.

I need not decide whether the ALJ erred in failing to consider Dr. Breckenridge's opinion as medical evidence from an acceptable medical source who has not treated or examined the claimant nor reviewed the complete medical file. Even if the ALJ did err, I agree with Defendant that any error is harmless.

Plaintiff does not dispute that if Dr. Breckenridge's opinion is characterized as lay witness testimony, it was properly discounted. An ALJ must give reasons "germane to the witness" when discounting the testimony of lay witnesses. Valentine v. Comm'r, 574 F.3d 685, 694 (9th Cir. 2009). The ALJ expressly discounted Dr. Breckenridge's opinion because Dr. Breckenridge acknowledged that Plaintiff's limitations were related to being a mother of two young children, not just because of her anxiety. This is a sufficient reason to reject the testimony.

Even if the ALJ had considered Dr. Breckenridge's opinion as coming from a treating, examining, or non-examining physician, the ALJ gave specific and legitimate reasons, supported by substantial evidence in the record, for rejecting it. The ALJ rejected the testimony of Plaintiff and her witnesses because it was not supported by the record for the period at issue. Tr. 19. The

13 - OPINION & ORDER

ALJ noted that Plaintiff stopped working for reasons unrelated to disability, that she experienced significant improvement in her anxiety and panic attacks after the birth of her second child, that even when she had some exacerbation of anxiety-related symptoms there was no evidence that her attacks were so severe that she could not function, and that she participated in no mental health counseling. Id. These reasons are sufficient for rejecting a medical source opinion and are supported in the record.

Moreover, as Defendant notes, Dr. Breckenridge's opinion that Plaintiff meets the criteria for Listing 12.06 is not binding on the ALJ because that determination is reserved to the Commissioner. And, I agree with Defendant that Dr. Breckenridge's evidence does not indicate that Plaintiff meets the criteria for Listing 12.06 in any event.

To satisfy the listing, a claimant must meet either parts "A" and "B", or, parts "A" and "C." 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.06. Assuming Plaintiff meets the "A" criteria, she still must have either (1) two of the following "B" criteria: (a) marked restriction of activities of daily living, (b) marked difficulties in maintaining social functioning, (c) marked difficulties in maintaining concentration, persistence, or pace, or (d) repeated episodes of decompensation, each of extended duration; or (2) the "C" criteria of a complete inability to function independently outside the area of one's home. Id.

In her February 7, 2012 letter, Dr. Breckenridge wrote that Plaintiff had marked difficulties in social functioning and "moderate to marked" difficulties in her concentration, persistence, and pace. Tr. 230. Because Listing 12.06 requires the presence of at least two marked abilities, having one marked and another noted to be "moderate to marked" do not satisfy that criteria. Dr. Breckenridge also wrote that Plaintiff meets the "C" criteria. Tr. 230. But, as

14 - OPINION & ORDER

the ALJ noted, Dr. Breckenridge testified that Plaintiff was able to shop for groceries, take the children to the bus stop, and shop for plants at nurseries.  Tr. 15, 225.  Dr. Breckenridge's opinion as to Listing 12.06 fails to establish that Plaintiff meets the criteria.

In sum, the ALJ was careful to state that she was limited to assessing Plaintiff's impairments for the period of July 10, 1997 to December 31, 2001.  The ALJ carefully explained why the record did not support a finding of disability for that time period.  Whether Dr. Breckenridge's evidence is considered lay witness testimony or medical evidence, the ALJ gave specific, legitimate reasons for rejecting that evidence which were fully supported in the record.  Thus, even if the ALJ erred, the error was harmless.

CONCLUSION

The Commissioner's decision is affirmed.

IT IS SO ORDERED.

Dated this ___7___ day of ___August___, 2014

Marco A. Hernandez
United States District Judge

15 - OPINION & ORDER